**UNITED STATES DISTRICT COURT**

**DISTRICT OF NEVADA**

United States of America,

    Plaintiff,

v.

Paulina Hernandez,

    Defendant.

Case No. 2:23-cr-00113-CDS-NJK

**Order**

[Docket No. 274]

Pending before the Court is Defendant Paulina Hernandez's motion to sever counts and defendants. Docket No. 274. The Court has considered Defendant's motion, the United States' response, and Defendant's reply. Docket Nos. 274, 278, 281.

## I.   BACKGROUND

On July 9, 2024, a federal grand jury sitting in Las Vegas, Nevada issued a superseding indictment charging Defendant and her co-defendants with various crimes. Docket No. 102. Specifically, Defendant is charged in Count One with Conspiracy to Distribute a Controlled Substance (Methamphetamine and Fentanyl), in violation of Title 21, United States Code, Sections 846, 841(a)(1), 841(b)(1)(A)(viii), and 841(b)(1)(B)(vi); in Count Nine with Distribution of a Controlled Substance (Methamphetamine), in violation of Title 21, United States Code, Sections 841(a)(1) and 841(b)(1)(A)(viii), and Title 18, United States Code, Section 2; in Count Ten with Engaging in the Business and Dealing in Firearms Without a License, in violation of Title 18 United States Code, Sections 922(a)(1)(A), 923(a), and 924(a)(1)(D); in Count Thirteen with Possession with Intent to Distribute a Controlled Substance (Methamphetamine), in violation of Title 21, United States Code, Sections 841(a)(1) and 841(b)(1)(A)(viii) and Title 18, United States Code, Section 2; in Count Fourteen with Possession with Intent to Distribute a Controlled Substance (Fentanyl), in violation of Title 21, United States Code, Sections 841(a)(1) and 841(b)(1)(B)(vi) and Title 18, United States Code, Section 2; and in Count Fifteen with Possession with Intent to Distribute a Controlled Substance (Cocaine), in violation of Title 21, United States

Code, Sections 841(a)(1) and 841(b)(1)(C) and Title 18, United States Code, Section 2. Docket No. 102. Defendant is charged along with other co-defendants in several of the counts. *Id*.

Defendant asks the Court to sever her trial from the trial of her co-defendants Darrell Glen Harris, Joey Lamar McRoyal, and Lamar Deshawn Rosser. *Id*. at 1. Defendant further asks the Court to sever the trial of counts ten, thirteen, fourteen, and fifteen against her from counts one and nine against her. *Id*. Defendant submits that the conspiracy is alleged to have occurred over a ten-month period, beginning in August 2022 and that she is "alleged to have joined the conspiracy on March 16, 2023." *Id*. at 3. Defendant submits that all of the substantive charges against her occurred over a period of 35 days, from March 16, 2023, to April 21, 2023. *Id*. at 4. *See also* Docket 102, Counts 9, 13, 14, 15.

Defendant submits that she will be prejudiced if her trial is not severed from the trials of her co-defendants. Docket No. 274 at 4-10. Specifically, Defendant submits that the evidence presented against her co-defendants will cause guilt by association and violate her right to a fair trial. *Id*. at 4. Defendant submits that "the great majority of the evidence offered at trial" will be against her co-defendants, "the alleged supplier and leaders of the conspiracy." *Id*. at 5-6. Defendant further submits that the United States will offer evidence to prove that Defendant Harris conspired to distribute a controlled substance in Sacramento, California and Pensacola, Florida and that, since none of this evidence relates to her, it will "undoubtedly soil her by association." *Id*. at 6.

Defendant further submits that her one of her co-defendants, McRoyal, made a statement to an undercover officer during a controlled buy wherein he stated that he "spoke a little Spanish but his baby mother and daughter spoke Spanish." *Id*. at 7. Since Defendant speaks Spanish and shares a child with McRoyal, she submits, if the statement is introduced at trial, she will be implicated as the person from whom McRoyal would request aid during a future gun deal. *Id*. at 7-8. Since she would not be able to cross-examine McRoyal, Defendant submits that this statement will unfairly prejudice her. *Id*. at 8.

Defendant also submits that, during trial, she will blame her co-defendants Harris and McRoyal for the controlled substances found in the vehicle in which she was a passenger on April

2

21, 2023, and "will argue that her involvement in the conspiracy, if any, was minimal, involving her following orders and instructions from her co-defendants." *Id*. at 9. Defendant further submits that her co-defendants are likely to argue that they had no knowledge of the controlled substances in the van on April 21, 2023, and will likely blame each other. *Id*. Defendant therefore states that she and her co-defendants have antagonistic defenses that require severance. *Id*. at 8-9.

Defendant next asks the Court to sever Counts 10, 13, 14, and 15 of the superseding indictment from the other counts against her (Counts 1 and 9) because she can testify as to those counts. *Id*. at 10. Trying them together, she submits, will force her to choose between testifying on all or none of the counts. *Id*. at 13. Defendant further submits that the drug counts should be tried separately from the firearm count (Count 10), as the groups of offenses "are not similar in character nor are they based on the same acts or transaction." *Id*. at 11. Defendant submits that she would be prejudiced from trying her for several offenses during the same trial. *Id*. at 12. She submits that proof that she is guilty of Count 1 or 9 could be used to convict her of dealing in firearms (Count 10), "even though such proof would not be admissible in a second trial." *Id*. Defendant submits that the "volume of evidence related to the drug counts will cumulate in the [jurors'] minds, tending to reinforce an inference of guilt on each count" and that "the danger of extreme prejudice of spillover related to the overwhelming volume of evidence … regarding her co-defendants' alleged controlled substance dealings cannot be ignored or understated." *Id*. at 13.

In response, the United States submits that the evidence demonstrates Defendant's involvement in the conspiracy long before March 16, 2023. Docket No. 278. Specifically, the United States submits, on August 23, 2022, co-defendant McRoyal drove a vehicle registered to Defendant to meet an undercover agent and sell methamphetamine to that agent. Id. at 1-2. Further, the United States submits, on September 22, 2022, after co-defendant Rosser sold methamphetamine to an undercover agent, the agent observed Rosser meet with Defendant, who was driving a vehicle registered to co-defendant McRoyal. *Id*. at 2. The United States submits that the agent observed Defendant go to the apartment complex that Rosser had mentioned during the sale and return to the vehicle carrying a package. *Id*. The United States submits that, on October 25, 2022, toll records for Defendant's phone show that she contacted co-defendants

3

McRoyal and Rosser that day prior to Rosser meeting the undercover agent to sell methamphetamine to the agent. *Id*. at 3. The United States further submits that, on January 26, 2023, during a drug transaction, an undercover agent asked co-defendant McRoyal if he knew someone who spoke Spanish to facilitate selling a firearm and McRoyal said that his baby mama (meaning Defendant) speaks Spanish. *Id*.

The United States submits that, on February 15, 2023, the Drug Enforcement Agency ("DEA") intercepted a phone call between Defendant and co-defendant McRoyal wherein she asked if she could get narcotics because she had customers who wanted to purchase them. *Id*. at 4. The United States further submits that, on February 17, 2023, the DEA intercepted phone calls Defendant made to co-defendants McRoyal and Rosser. *Id*. In the first call, the United States submits, Defendant asked McRoyal if there were ten e-pills she could sell to a customer and McRoyal said the pills were at the apartment. *Id*. The United States submits that Defendant then called Rosser to tell him she was trying to get pills. *Id*. The United States further submits that, on March 9, 2023, the DEA intercepted a phone call in which Defendant told McRoyal that her customer did not like the pills containing fentanyl that McRoyal gave her to sell. *Id*.

The United States submits that, on March 10, 2023, an undercover officer who had been purchasing narcotics from Defendant called her to ask if she would sell methamphetamine to his "homie" and she said yes. Id. at 4-5. The United States further submits that, on March 11, 2023, the DEA intercepted phone calls between Defendant and co-defendant McRoyal wherein Defendant said she had a customer who wanted a "quarter piece," discussed pricing with McRoyal, and agreed to meet him at the stash apartment. *Id*. at 5. The United States submits that, on March 15, 2023, an undercover agent called co-defendant McRoyal to follow up on a firearms sale. *Id*. During the conversation, McRoyal expressed interest in selling the firearm and said he would have his girlfriend call the customer "Miguel" because "[s]he's the one that speaks Spanish." *Id*. That same day, the United States submits, Defendant called "Miguel" and agreed to sell him two firearms. *Id*.

The United States submits that, on March 15, 2023, an undercover officer called Defendant and, after some discussion, Defendant agreed to sell methamphetamine to the undercover officer.

*Id*.  The United States further submits that, on March 16, 2023, Defendant sent the undercover officer the address of the stash apartment, and the two agreed to meet near that address.  *Id*. at 6.  While the undercover officer waited at the meet location, he saw co-defendant McRoyal at the stash apartment complex carrying a small brown paper bag.  *Id*.  Shortly after McRoyal walked out of view, Defendant came to the undercover officer's car carrying the same bag that McRoyal had had and gave it to him in exchange for money - the bag contained methamphetamine.  *Id*.

The United States submits that, on March 19, 2023, the DEA intercepted a phone call during which Defendant told co-defendant McRoyal that she had a customer and asked McRoyal to bring "crys," or methamphetamine, from the stash apartment to McRoyal's house.  *Id*.  The United States further submits that, on March 23, 2023, an undercover agent called Defendant and, during the phone call, she agreed to sell firearms to the undercover agent.  *Id*. at 7.  The United States submits that the DEA then intercepted a phone call wherein Defendant told McRoyal the undercover agent wanted a Glock firearm, McRoyal said he had one but did not want to sell it, and Defendant stated that she understood and was not trying to sell hers either.  *Id*.  The United States submits that more phone calls occurred between the undercover agents and both Defendant and McRoyal and that, when the agent told Defendant he was planning to meet McRoyal to buy drugs and maybe the firearm could be sold to him at the same time, she responded that "you're going through me and my other friend" on the firearm sale.  *Id*.

The United States submits that the DEA intercepted more phone calls between Defendant and McRoyal wherein they discussed the firearm sale and the contact from whom she planned to obtain the firearms, as well as a separate customer that Defendant said wanted to buy drugs from her at a certain price, to which McRoyal agreed.  *Id*. at 7-8.  Further, the United States submits, the DEA intercepted a call between Defendant and McRoyal wherein Defendant asked McRoyal how much he wanted for his .22 caliber firearm because she wanted to sell it and, after discussing prices, McRoyal stated he was not sure he wanted to sell the firearm.  *Id*. at 8.  The United States also submits that co-defendant Rosser texted an undercover DEA agent to say that he would be completing the sale of methamphetamine that the agent had negotiated with McRoyal.  *Id*.  The United States further submits that, on March 26, 2023, the DEA intercepted a call between

Defendant and McRoyal, during which Defendant asked McRoyal about buying drugs and they agreed to meet at his house to complete the transaction. *Id*.

On March 27, 2023, the United States submits, an undercover agent met with Defendant in a parking lot next to co-defendant Rosser's stash apartment and Defendant sold the undercover agent two firearms. *Id*. Less than ten minutes later in the same location, a co-defendant who was sent by Rosser sold the undercover agent a pound of methamphetamine. *Id*. at 8-9. The United States further submits that, between April 16-20, 2023, the undercover agent called and texted with McRoyal to purchase 500 pills containing fentanyl and, on April 20, 2023, McRoyal met the agent at the same parking lot where Defendant sold the firearms and sold the agent the pills. *Id*. at 9. The United States submits that McRoyal was driving a white Chevolet van registered to a company owned by co-defendant Darrell Harris. *Id*.

The United States submits that, on April 20, 2023, the DEA intercepted calls and texts between McRoyal and Harris wherein McRoyal agreed to drive to California to pick up narcotics for their drug trafficking organization. *Id*. In the early morning hours of April 21, 2023, the United States submits, Nevada Highway Patrol ("NHP") troopers stopped the van after it reentered Nevada from California. *Id*. The United States submits that McRoyal was driving the van and Defendant was the sole passenger and that, inside the van, troopers recovered methamphetamine, fentanyl, and cocaine, as well as Harris' fingerprint on the wrapping covering some of the methamphetamine. *Id*. That same day, the United States submits, the DEA intercepted two phone calls between Defendant and McRoyal regarding a drug stash location used by their drug trafficking organization and that Defendant was helping to clear out and move the stash location. *Id*. at 10. Further, the United States submits that, on April 22, 2023, the DEA intercepted a phone call in which co-defendant Rosser stated that Rosser, McRoyal and another co-defendant used the van to pick up narcotics from co-defendant Harris and that he had a bad feeling about McRoyal's trip on April 20-21, 2023, which is why he was not in the van as well. *Id*.

In reply, Defendant submits that the facts submitted by the United States demonstrate that a disparity in the amount of evidence between her and her co-defendants exists and will result in spillover, that prejudice will result from co-defendant McRoyal's statements, and that prejudice

will result from the antagonistic and/or mutually exclusive defenses of Defendant and her co-defendants. Docket No. 281 at 1-2. Defendant submits that the United States "lays out a series of factual allegations attempting to boot-strap [her] through weak circumstantial, prejudicial, and often irrelevant evidence" to demonstrate that she was involved in the conspiracy as early as August 2022. *Id*. at 2. Defendant submits that the evidence against her co-defendants will spillover against her, which will be highly prejudicial to her. *Id*. at 6.

Defendant further submits that co-defendant McRoyal's statements to the undercover agent that she is in a relationship with him and speaks Spanish are testimonial and will unduly prejudice her if the two are tried together. *Id*. at 6-8. Finally, Defendant submits that she will blame her co-defendants McRoyal and Harris for the items seized from the van in which she was a passenger. *Id*. at 8. Defendant further submits that co-defendant Harris will "likely" argue that she and McRoyal are responsible for those narcotics and that McRoyal will "likely" blame Harris. *Id*. at 8-9. Therefore, Defendant submits, their defenses are antagonistic and require severance. *Id*. at 9. Finally, Defendant asks the Court to sever certain of the counts against her so that she can choose whether to testify. *Id*. at 9-10.

## II.    ANALYSIS

Under Federal Rule of Criminal Procedure 8(b), multiple defendants may be joined in the same indictment "if they are alleged to have participated in the same act or transaction, or in the same series of acts of transactions, constituting an offense or offenses." It is "well-established that in the federal system there is a preference for joint trials where defendants have been jointly indicted." *United States v. Hernandez-Orellana*, 539 F.3d 994, 1001 (9th Cir. 2008) (citing *Zafiro v. United States*, 506 U.S. 534, 538 (1993)). "Defendants jointly indicted ordinarily should be jointly tried. Serious consideration must be given to judicial economy. The burden is on the defendant to show clear, manifest, or undue prejudice from a joint trial." *United States v. Mikhel*, 889 F.3d 1003, 1046 (9th Cir. 2018). *See also United States v. Mariscal,* 939 F.2d 884, 885 (9th Cir. 1991) (co-defendants jointly charged are, *prima facie,* to be jointly tried).

Joinder of charges against multiple defendants is particularly appropriate when the charges involve substantially overlapping evidence. *United States v. Vasquez–Velasco,* 15 F.3d 833, 844

(9th Cir. 1994). There is a strong preference for joint trials because separate trials would "impair both the efficiency and the fairness of the criminal justice system" by requiring the United States to "bring separate proceedings, presenting the same evidence again and again[.]" *Richardson v. Marsh,* 481 U.S. 200, 210 (1987). Joint trials also serve the interests of justice "by avoiding the scandal and inequity of inconsistent verdicts." *Id.* at 211. The Ninth Circuit has repeatedly stated that a joint trial is particularly appropriate in a conspiracy case where the evidence of the individual conspirators' conduct and statements in furtherance of the conspiracy are admissible against all of the defendants charged in the conspiracy. *United States v. Freeman,* 6 F.3d 586, 598 (9th Cir. 1993); *United States v. Hernandez,* 952 F.2d 1110, 1114–15 (9th Cir. 1991).

Fed.R.Crim.P. 14(a), however, provides that "[i]f the joinder of offenses or defendants in an indictment, an information, or a consolidation for trial appears to prejudice a defendant or the government, the court may order separate trials of counts, sever the defendants' trials, or provide any other relief that justice requires." Rule 14 "sets a high standard for showing prejudice." *Vasquez-Velasco*, 15 F.3d at 845. The Supreme Court has held that a district court should grant a severance under Rule 14 only if there is a serious risk that a joint trial would compromise a specific trial right of one of the defendants. *Zafiro*, 506 U.S. at 540. A defendant carries the heavy burden of making a strong showing of factually specific and compelling prejudice resulting from a joint trial. *United States v. Kenny*, 645 F.2d 1323, 1345 (9th Cir. 1981). To meet that burden, "the defendant [must] show 'clear,' 'manifest,' or 'undue' prejudice from a joint trial," *United States v. Polizzi*, 801 F.2d 1543, 1553–54 (9th Cir. 1986), and must demonstrate the jury's inability to distinguish the evidence relevant to each defendant; further, even if a defendant is able to show some potential jury confusion, such confusion must be balanced against society's interest in speedy and efficient trials. *United States v. Benton*, 852 F.2d 1456, 1469 (6th Cir. 1988).

Rule 14 does not require severance even if prejudice is shown; rather, it leaves the tailoring of the relief to be granted, if any, to the district court's sound discretion. *Zafiro,* 506 U.S. at 538–539. The court's denial of a motion to sever is reviewed for abuse of discretion. *See United States v. Fernandez,* 388 F.3d 1199, 1241 (9th Cir.2004). "The test for determining abuse of discretion in denying severance under Rule 14 is whether a joint trial would be so prejudicial that the trial

8

judge could exercise his discretion in only one way." *United States v. Escalante,* 637 F.2d 1197, 1201 (9th Cir.1980).

In determining the prejudicial effect of a joint trial, a court must consider: (1) whether the jury may reasonably be expected to collate and appraise the individual evidence against each defendant; (2) the judge's diligence in instructing the jury on the limited purposes for which certain evidence may be used; (3) whether the nature of the evidence and the legal concepts involved are within the competence of the ordinary juror; and (4) whether defendant can show, with some particularity, a risk that the joint trial would compromise a specific trial right of one of the defendants, or prevent the jury from making a reliable judgment about guilt or innocence. *United States v. Hernandez–Orellana,* 539 F.3d 994, 1001 (9th Cir. 2008), citing *United States v. Sullivan,* 522 F.3d 967, 981–82 (9th Cir. 2008). The most important factors are whether the jury can compartmentalize the evidence against each defendant and the judge's diligence in providing evidentiary instructions to the jury. *Sullivan,* 522 F.3d at 981–82.

### A. Spillover Evidence

"A claim of prejudicial spillover cannot succeed unless 'a defendant ... prove[s] prejudice so pervasive that a miscarriage of justice looms.'" *United States v. Lazarenko*, 564 F.3d 1026, 1043 (9th Cir. 2009) (quoting *United States v. Levy-Cordero*, 67 F.3d 1002, 1008 (1st Cir. 1995)). The prejudice necessary to justify a severance is not demonstrated by a "mere allegation that a defendant would have a better chance of acquittal in a separate trial" or "an argument that evidence against one defendant would have a 'spillover effect' on another defendant." *United States v. Clark,* 717 F.3d 790, 818 (10th Cir. 2013); *see Zafiro*, 506 U.S. at 540 ("[I]t is well settled that defendants are not entitled to severance merely because they may have a better chance of acquittal in separate trials").

In assessing whether joinder is prejudicial, of foremost importance is whether the evidence as it relates to the individual defendants is easily compartmentalized. *Vasquez-Velasco*, 15 F.3d at 846. Further, a "critical factor in this assessment is 'the judge's diligence—or lack thereof—in instructing the jury on the purposes to which various strands of evidence may be put.'" *United States v. Cuozzo*, 962 F.2d 945, 950 (9th Cir. 1992) (citing *United States v. Douglass,* 780 F.2d

9

1472, 1479 (9th Cir. 1986).  "Where the district court uses great diligence in instructing the jury to separate the evidence, severance is unnecessary because the prejudicial effects of the evidence of codefendants are neutralized."  *United States v. Stinson*, 647 F.3d 1196, 1205 (9th Cir. 2011). Well-settled law establishes that "[a] defendant seeking severance based on the spillover effect of evidence admitted against a codefendant must also demonstrate the insufficiency of limiting instructions given by the judge."  *United States v. Joetzki*, 952 F.2d 1090, 1094 (9th Cir. 1991) (citation omitted).

Here, even if the evidence against the co-defendants is stronger than the evidence against Defendant, the Court finds that the potential for spillover is low, there has been no adequate demonstration of prejudice, and the evidence that relates to the individual defendants is easily compartmentalized.  Further, Defendant fails to address the issue of jury instructions.  The United States submits that the Court can easily neutralize any potential prejudice with proper jury instructions and Defendant fails to demonstrate that jury instructions would be insufficient. Therefore, the Court finds that the potential of spillover evidence does not justify severance of Defendant's trial from that of her co-defendants.  *See United States v. Decoud*, 456 F.3d 996, 1008-09 (9th Cir. 2006) (court's repeated instructions to the jury to consider each defendant's guilt or innocence separately and not consider co-defendant's statements against defendant were sufficient to prevent any potential prejudice to defendant from joint trial); *United States v. Rasheed,* 663 F.2d 843, 854–55 (9th Cir. 1981) (refusal to sever upheld even though evidence against codefendant was much stronger because judge gave proper cautionary instructions to jury and appellants failed to indicate how jury would be unable to compartmentalize the evidence).

### B.  Antagonistic Defenses

"Antagonism between defenses or the desire of one defendant to exculpate himself by inculpating a codefendant ... is insufficient to require severance."  *United States v. Throckmorton*, 87 F.3d 1069, 1072 (9th Cir. 1996) (internal citations omitted); *see also United States v. Arias–Villanueva*, 998 F.2d 1491, 1502 (9th Cir. 1993) (overruled on other grounds by *United States v. Jimenez–Ortega*, 472 F.3d 1102, 1103-04 (9th Cir. 2007) (defendant not entitled to severance simply because codefendant presented defense based on coercion by defendant)).  "Mere

inconsistency in defense positions is insufficient" to warrant severance. *United States v. Tootick*, 952 F.2d 1078, 1081 (9th Cir. 1991) (internal citation omitted). While mutually antagonistic defenses may prevent a jury from reliably determining guilt or innocence thereby warranting severance, this occurs only when "the core of the codefendant's defense is so irreconcilable with the core of the [moving defendant's] own defense that the acceptance of the codefendant's theory by the jury precludes acquittal of the defendant." *Throckmorton*, 87 F.3d at 1072.

In *Zafiro*, the Supreme Court recognized that "mutually antagonistic" or "irreconcilable" defenses may be so prejudicial in some circumstances as to mandate severance. 506 U.S. at 538. However, the Court declined to adopt a bright-line rule mandating severance when co-defendants have conflicting defenses. *Zafiro,* 506 U.S. at 538. The Court concluded that "mutually antagonistic defenses are not prejudicial *per se.*" *Id.* The Court held that a district court should grant a severance of properly joined defendants "only if there is a serious risk that a joint trial would compromise a specific trial right of one of the defendants, or prevent the jury from making a reliable judgment about guilt or innocence." *Id.* at 539.

The Court further noted that, although a district court is more likely to determine that separate trials are necessary when there is a high risk of prejudice, less drastic measures such as limiting instructions often will suffice to cure any risk of prejudice. *Id.* at 539–540. Thus, severance is not necessarily required "even if prejudice is shown; rather, it leaves the tailoring of the relief to be granted, if any, to the district court's sound discretion." *Id.* at 539.

Simply stated, "[i]t is difficult to obtain severance on the basis of a mutually antagonistic defense claim." *United States v. Johnson*, 297 F.3d 845, 858 (9th Cir. 2002). In fact, the Supreme Court has noted that appellate "courts have reversed relatively few convictions for failure to grant a severance on grounds of mutually antagonistic or irreconcilable defenses. The low rate of reversal may reflect the inability of defendants to prove a risk of prejudice in most cases involving conflicting defenses." *Zafiro*, 506 U.S. at 538.

Nonetheless, "[w]hen defendants present mutually exclusive defenses, the jury often cannot 'assess the guilt or innocence of the defendants on an individual and independent basis.'" *United States v. Mayfield*, 189 F.3d 895, 899, 900 (9th Cir. 1999) (internal citation omitted). When

11

a trial involves two or more codefendants, "defendants are not entitled to severance merely because they may have a better chance of acquittal in separate trials." *Zafiro*, 506 U.S. at 540. In order for Defendant to be entitled to severance in this case, she must show that the core of the defense presented by her co-defendants is so irreconcilable with the core of her own defense that the acceptance of one of the co-defendants' theories will preclude her acquittal. *Throckmorton*, 87 F.3d at 1072.

Defendant submits that she will blame Harris and McRoyal for the narcotics found in the van on April 21, 2023, and will argue that her involvement in the conspiracy, if any, was minimal. Docket No. 274 at 9. She further submits that she anticipates that Harris and McRoyal will argue that they had no knowledge of the narcotics in the van and will "likely" each blame the other party. *Id*. The anticipated defense presented by Harris and McRoyal is not so irreconcilable with Defendant's theory that the acceptance of either or both of the co-defendants' theories would preclude her acquittal. *Throckmorton*, 87 F.3d at 1072. Therefore, Defendant is not entitled to severance on this ground.

### C. Co-Defendant's Statement

Defendant asks the Court to sever her trial from McRoyal's trial because McRoyal told an undercover agent during a controlled buy that his baby mama and daughter spoke Spanish and she shares a child with McRoyal and speaks Spanish. Docket No. 274 at 7.

A series of United States Supreme Court cases discuss the standard to be applied by district courts when they are asked to decide motions to sever the trials of criminal defendants. These cases include, but are not limited to, *Bruton v. United States*, 391 U.S. 123 (1968), *Richardson v. Marsh*, 481 U.S. 200 (1987), *Gray v. Maryland*, 523 U.S. 185 (1998), and *Crawford v. Washington*, 541 U.S. 36 (2004).

"*Bruton* established that in joint criminal trials, the introduction of 'powerfully incriminating extrajudicial statements of a codefendant, who stands accused side-by-side with the defendant,' but who does not testify, violates the defendant's Sixth Amendment right to confront the witnesses against him." *Lucero v. Holland*, 902 F.3d 979, 983 (9th Cir. 2018) (citing *Bruton*, 391 U.S. at 135-36). In *Richardson*, the Supreme Court held "that the Confrontation Clause is not

12

violated by the admission of a non-testifying co-defendant's confession with a proper limiting instruction when ... the confession is redacted to eliminate not only the defendant's name, but any reference to his or her existence." 481 U.S. at 211 (citation omitted).

"*Crawford* added a new layer to the Sixth Amendment analysis - that the Amendment's Confrontation Clause right attaches only ... to 'testimonial statements.'" *Lucero*, 902 F.3d at 984 (citing *Crawford*, 541 U.S. at 68). The *Crawford* Court did not provide "a comprehensive definition of testimonial" statements, but did include within this classification "ex parte in-court testimony or its functional equivalent—that is, material such as affidavits, custodial examinations, prior testimony that the defendant was unable to cross-examine, or similar pretrial statements that declarants would reasonably expect to be used prosecutorially; ... extrajudicial statements ... contained in formalized testimonial materials ...; [or] statements that were made under circumstances which would lead an objective witness reasonably to believe that the statement would be available for use at a later trial." *Crawford*, 541 U.S. at 51-52 (internal citations and quotation marks omitted).

In *Davis v. Washington*, 547 U.S. 813, 822 (2006), the Court explained that statements are testimonial when they result from questioning, "the primary purpose of [which] ... is to establish or prove past events potentially relevant to later criminal prosecution." Statements made unwittingly to a government informant are not testimonial. *Id*. at 825 (quoting *Bourjaily v. United States*, 483 U.S. 171, 181-184 (1987)). Co-conspirator statements are not testimonial and therefore beyond the compass of *Crawford's* holding. *United States v. Allen*, 425 F.3d 1231, 1235 (9th Cir. 2005). *See Crawford*, 541 U.S. at 56 (describing "statements in furtherance of a conspiracy" as "statements that by their nature [are] not testimonial"). A statement that is not testimonial does not implicate the Confrontation Clause. *See Ohio v. Clark*, 576 U.S. 237, 245 (2015).

Here, the statement about which Defendant complains was made to an undercover agent in furtherance of the alleged conspiracy. Therefore, it is not testimonial, does not implicate the Confrontation Clause, and is not a basis on which to grant severance.

. . . .

. . . .

### D.    Severance of Counts

Defendant asks the Court to sever the counts against her on which she can testify (Counts 10, 13-15) from the counts against her on which she submits she cannot testify (Counts 1 and 9). Docket No. 274 at 10.

To justify severance on this basis, a defendant must demonstrate that she has "important testimony to give on some counts and a strong need to refrain from testifying on those" that she wants severed. *United States v. Nolan*, 700 F.2d 479, 483 (9th Cir. 1983). Further, a defendant must list "the specific testimony [she] will present about one offense, and [her] specific reasons for not testifying about others." *United States v. DiCesare*, 765 F.2d 890, 898 (9th Cir. 1985), *as amended*, 777 F.2d 543 (9th Cir. 1985) (quoting *United States v. Bronco*, 597 F.2d 1300, 1303 (9th Cir. 1979). *See also United States v. Broadbent*, 2023 WL 7135307, at *3 (E.D. Cal. Oct. 30, 2023). Defendant fails to make the requisite showing; therefore, no basis exists to sever these counts.

Defendant also asks the Court to sever Count 10 from her other counts. Docket No. 274 at 11-13. She submits that the drug-related offenses are not similar in character, based on the same acts or transactions, or constitute a common scheme or plan as the firearm offense in Count 10. *Id*. The United States submits that the counts are, in fact, of the same or similar character and constitute a common scheme or plan. Docket No. 278 at 23-24. For example, the United States submits, Counts 10 and 11 occurred on the same date in the same location within ten minutes of each other, facilitated by co-defendant McRoyal and involving the same government witness and overlapping intercepted phone calls. Id. at 24. The United States further submits that the modus operandi as to all counts in the superseding indictment is the same and that the evidence as to the firearms is "so interwoven with the evidence as to the drugs that the former would be admissible in a separate trial on charges related to the latter." *Id*.

As stated above, Fed.R.Crim.P. 8(a) permits the joinder of two or more offenses in an indictment where they are "of the same or similar character, or are based on the same act or transaction, or are connected with or constitute parts of a common scheme or plan." "'[B]ecause Rule 8 is concerned with the propriety of joining offenses in the indictment, the validity of the

joinder is determined solely by the allegations in the indictment.'" *United States v. Jawara*, 474 F.3d 565, 573 (9th Cir. 2006) (quoting *United States v. Terry*, 911 F.2d 272, 276 (9th Cir. 1990)). "Rule 8 has been 'broadly construed in favor of initial joinder.'" *Id.* at 573 (quoting *United States v. Friedman*, 445 F.2d 1076, 1082 (9th Cir. 1971)); *United States v. Armstrong*, 621 F.2d 951, 954 (9th Cir. 1980) ("[J]oinder is the rule rather than the exception.").

Fed.R.Crim.P. 14(a) provides for severance if "the joinder or offenses or defendants in an indictment … appears to prejudice a defendant…"  The determination of whether prejudice from joinder exists "depends, in large measure, upon the facts and circumstances of each case." *United States v. Begun*, 446 F.2d 32, 33 (9th Cir. 1971).  An important factor to consider when determining if prejudice exists is whether evidence of one of the crimes would be admissible in the trial of the other; if so, generally there is no prejudice.  *Id*.

There is a presumption against severance unless joinder would result in unfair prejudice. *See United States v. Armstrong*, 621 F.2d at 954.  Moreover, the Court agrees with the United States that the evidence for Count 10 is so interrelated with the other counts that "the evidence as to the one cannot be intelligently severed from the evidence as to the other" and that separating the charges would result "in a duplicative presentation of evidence," which disregards judicial economy. *United States v. Fiorentino*, 2023 WL 8455127, at *2 (D.Ariz. Dec. 6, 2023) (internal citations omitted).  To the extent there is any risk of prejudice, the Court can give the jury limiting instructions "to emphasize that each count charges a separate crime and that there needs to be sufficient evidence to prove each crime." *Id*. *See also United States v. Rodriguez-Landa*, 2019 WL 653853, at *7 (C.D. Cal. Feb. 13, 2019) ("Courts regularly hold that prejudice from a refusal 'to sever counts can be cured by proper jury instructions, and juries are generally presumed to follow their instructions'").

. . . .

. . . .

. . . .

. . . .

. . . .

15

## III.    CONCLUSION

Accordingly, for the reasons stated above, the Court **DENIES** Defendant's motion for severance of counts and defendants.  Docket No. 274.

IT IS SO ORDERED.

Dated: March 26, 2026.

_____
Nancy J. Koppe
United States Magistrate Judge

16